UNITED STATES of America,
Plaintiff–Appellee,

v.

Stuart W. SHOWALTER,
Defendant–Appellant.

No. 90–1361.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1990.

Decided May 30, 1991.

Robert M. Barnes, Susan E. Heckard, Asst. U.S. Attys., Indianapolis, Ind., for plaintiff-appellee.

Daniel J. Coffey, Indianapolis, Ind., for defendant-appellant.

Before CUDAHY, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Stuart Showalter pleaded guilty to possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). He appeals the length and conditions of his supervised release. We remand for resentencing because the length of supervised release exceeds the amount authorized by statute, but affirm the conditions of Showalter's supervised release imposed by the district court.

## I.

Showalter headed an Indianapolis organization called the "Pure American Freedom Party," which was loosely associated with other white supremacist "skinhead" and "neo-Nazi" groups in Indiana and around the United States. Showalter, then 20 years old, was prominently featured in a July 1989 article in the *Indianapolis Monthly* magazine called "Skinhead Society: Should a Local Group of Neo–Nazis be Feared, Tolerated or Ignored?" The article described the weaponry in Showalter's apartment, and discussed the group's potential for committing acts of violence. This publicity apparently brought him to the attention of his landlords, who sought to evict him from his apartment (in a predominantly black neighborhood) for late payment of rent and violation of the lease by having too many occupants. Showalter failed to leave on time, and was seen outside the apartment brandishing a weapon, so the police were called in to assist in his departure. When he failed to respond to their request to drop his gun and come out, the police broke in and arrested him and another occupant.

## II.

Pursuant to a plea agreement, Showalter pleaded guilty to possession of an unregistered firearm—a "Remington Wingmaster .12 gauge sawed-off shotgun with an obliterated serial number"—in violation of 26 U.S.C. § 5861(d). He was sentenced within the guidelines to 14 months imprisonment, followed by five years supervised release. The terms of supervised release included the condition that Showalter "shall not participate in, or associate with those who do participate in, the organization known as 'skinheads,' or in any neo-Nazi organization." Showalter appealed both the length and conditions of his supervised release.

## III.

■ The government concedes the district court erred in imposing a five-year period of supervised release. Title 18 U.S.C. § 3583(b)(2) provides that the maximum length of supervised release for a "Class C" felony—where the maximum term of imprisonment is between 10 and 25 years, pursuant to § 3559(a)(3)—is three years. The maximum term for violating 26 U.S.C. § 5861(d) is 10 years. *See* 26 U.S.C. § 5871. Thus, under guidelines § 5D3.2(b)(2) (renumbered November 1, 1989 to § 5D1.2(b)(2)), Showalter must receive a term of supervised release of "at least two years but not more than three years." We remand to the district court for the purpose of adjusting the length of supervised release.

Showalter does not challenge the condition of supervised release that he not participate in white supremacist organizations, but does raise three related objections to the requirement that he avoid associating with other skinheads and neo-Nazis. We review the district court's imposition of conditions of supervised release under the deferential "abuse of discretion" standard. *United States v. Alexander*, 743 F.2d 472, 479–80 (7th Cir.1984) (citations omitted).

■ He first contends that the condition lacks the "certainty" required by the new Sentencing Reform Act of 1984 "because skinheads and neo-nazis are not readily identifiable groups." No case law is cited to support the contention that the Sentencing Reform Act was intended to limit the broad discretion given district courts to determine conditions of supervised release (formerly conditions of probation). *See Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932); *United States v. Williams*, 787 F.2d 1182, 1185 (7th Cir.1986).

The district court placed similar conditions on Showalter during the time between the guilty plea and sentencing, and Showalter had no difficulty understanding them then. At the sentencing hearing, the district court reprimanded Showalter for writing a letter espousing his white supremacist views to a newspaper in Washington state.[1] Showalter responded:

---

**1.** Although the district court seemed to think the

conditions placed on Showalter prior to sen-

As regards to this happening after my plea agreement, I was under the understanding I was not to hang out with the skinheads out on the street up in Broad Ripple, so forth, have them over at my house, things like that. I wasn't aware that it covered giving my opinion to a newspaper.

We hold that the condition is sufficiently clear to put Showalter on notice regarding the parameters of the court's restriction on his associational activities.

■ Next Showalter argues that the condition of probation is not specific enough to comply with 18 U.S.C. § 3563(b)(7), which allows the district court to order the defendant to "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons; ...". Pressed at oral argument, Showalter's counsel did not say that these "specified persons" must be listed by name, but he did contend they must be specified to some greater, but unexplained, degree.

We first point out that the district court is empowered, under 18 U.S.C. § 3583(d), to impose "any other condition it considers to be appropriate." That would seem to provide an independent authority for the district court's decision here. Even so, we think the condition imposed by the district court is authorized by 18 U.S.C. § 3563(b)(7).

In *Malone v. United States*, 502 F.2d 554, 555 (9th Cir.1974), the Ninth Circuit upheld similar conditions of probation on a defendant who was convicted of unlawful exportation of firearms from the United States to the United Kingdom. These conditions prevented him from participating in any American Irish Republican movement, from belonging to any Irish organization, from participating in any Irish Catholic organization, from visiting any Irish pubs, and from accepting employment that would directly or indirectly associate him with any Irish organization. The court found that

> the conditions of probation ... are not too vague and are reasonably related to

the goals of probation and the accomplishment of public order and safety and ... do not constitute an abuse of the Court's discretion in the circumstances.

*Id.*, 502 F.2d at 557.

We cited *Malone* with approval in *Alexander*, 743 F.2d at 480–81, where we noted that district courts frequently were allowed to prevent defendants from being involved in different types of "gainful activity" as a condition of probation. While the restriction on Showalter's associational activity is significant, it is no more significant than that approved in *Malone*, and it is justified by the court's concern that Showalter not involve himself with those who might fuel his proclivity for lawbreaking.

■ Finally, Showalter suggests that this condition does not comport with 18 U.S.C. § 3583(d)(2)'s requirement that it involve "no greater deprivation of liberty than is reasonably necessary" to deter future criminal conduct and protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(B), (C) and (D). However, the district court's explanation of the condition adequately supports depriving Showalter of the liberty to associate with skinheads and neo-Nazis:

> Because those groups embrace violence and the threat of violence as a method of advancing their views, I find that your association with them would create a high likelihood that you would be drawn into that same behavior, and that's the reason for the restriction.

The court also reminded Showalter that supervised release is intended to be a period of time when you're under close supervision by the court to make sure that after you get out of prison you can abide by the terms and conditions that hopefully will keep you within a lawful groove and keep you from slipping back into your criminal behavior.

After reviewing the entire record, including the magazine article about Showalter and his organization, we conclude the dis-

tencing should have at least discouraged him from writing controversial letters to newspapers, there is nothing to that effect in the condi-

tions imposed at sentencing. This incident illustrates the importance of specificity in formulating conditions of supervised release.

trict court was correct that Showalter needs to be separated from other members of white supremacist groups to have a chance of staying out of trouble. This condition of supervised release therefore meets the statutory requirements of 18 U.S.C. § 3583(d)(2).

The district court did not abuse its discretion in ordering special conditions of supervised release, and that portion of the sentence is affirmed. We remand to the district court to resentence on the length of supervised release in a manner consistent with 18 U.S.C. § 3583(b)(2), and guidelines § 5D3.2(b)(2), now § 5D1.2(b)(2).

AFFIRMED IN PART, AND REMANDED.