# PUBLISH

## UNITED STATES COURT OF APPEALS
<u>Filed 8/9/96</u>TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

THEODORE J. EDGIN, also known as
Theodore John Edgin, also known as
Theodore Edgin,

     Defendant-Appellant,

No. 95-6409

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CR-95-95-A)

---

Submitted on the Briefs:

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma,
for Defendant-Appellant.

Patrick M. Ryan, United States Attorney, and Ted A. Richardson, Assistant
United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **KELLY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Theodore John Edgin pled guilty to using a telephone to communicate a

threat in violation of 18 U.S.C. § 875(c), and was sentenced to a term of thirty-seven months imprisonment to be followed by thirty-six months of supervised release under special conditions. He appeals. We affirm in part, but we remand one of the special conditions of supervised release for further consideration by the district court.[1]

## I.

Mr. Edgin met Mischelle Heiser in 1982, and over the following thirteen years they had a tumultuous relationship. Mr. Edgin was often incarcerated, and when he was not he lived in Oklahoma while Ms. Heiser lived in North Dakota. Nevertheless, on December 8, 1988, Ms. Heiser gave birth to Jerrad Heiser, Mr. Edgin's son. Soon thereafter, Mr. Edgin was again incarcerated. When he was released in August 1989, he visited Ms. Heiser and Jerrad in North Dakota. Over the next four years, he visited them periodically.

In February 1995, Ms. Heiser chose to end their relationship. Mr. Edgin was unwilling to accept this change, and escalated his contacts with Ms. Heiser. He repeatedly called her, mailed letters, and sent flowers.

Jerrad did not know that Mr. Edgin was his father until Mr. Edgin told him

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. Therefore the case is ordered submitted without oral argument.

in a March 1995 telephone conversation.  Ms. Heiser was upset by this, and sought to keep Mr. Edgin away.  In response, Mr. Edgin told her he would establish his rights to visitation in court and seek to have his name added to Jerrad's birth certificate.[2]

Around this time, Ms. Heiser started a relationship with a co-worker, Mr. Highman.  In the spring of 1995, Mr. Edgin called and wrote Mr. Highman to ask him to respect Mr. Edgin's relationships with Ms. Heiser and Jerrad.  At some point, Mr. Highman responded by thanking Mr. Edgin for leaving a bathrobe at Ms. Heiser's residence, as it came in handy when he got out of bed.  Mr. Highman then told Jerrad that Mr. Edgin did not want to be his father anymore and would not visit him again.

On the night of May 4, upset by Mr. Highman and drunk, Mr. Edgin called Mr. Highman's residence in North Dakota from his own home in Shawnee, Oklahoma.  Although Mr. Highman hung up on Mr. Edgin more than once, Mr. Edgin called back.  Eventually, Mr. Edgin left a message on Mr. Highman's answering machine in which he threatened to hurt Mr. Highman in clear, forceful terms:

> I mean I'm gonna physically hurt you with my bare hands as
> badly as I possibly can.  OK?  You're fucking around with the

---

[2] Apparently Mr. Edgin has not legally established himself as Jerrad's father, but Ms. Heiser told probation officers that Mr. Edgin is Jerrad's father.  The government does not suggest otherwise.

most dangerous thing you can; a man's family. You're half my size. You sit on your ass all day in an air conditioned office. I do a man's work 11 hours a day. I went to the penitentiary for beating the shit out of cops. You're not going to be able to wipe your own ass when I get done with you. . . . If you go anywhere near Shelly or Jerrad, ever again in your life, you're, you, you know, God himself won't be able to get me off you. I'm gonna bust some jaws. I'm gonna bust some fingers. I'm going to bust some arms. . . . God himself cannot keep me off you; and I am gonna physically hurt your sawed-off Yankee ass as bad as I possible can.

PSR at ¶ 10. Some eleven days later, Mr. Edgin again called Mr. Highman and discussed these threats.

Mr. Edgin was indicted for one count of making a threat via an interstate telephone communication. He was arrested, and released on bond. Although a condition of his release was that he not contact Ms. Heiser, Mr. Highman or Jerrad, Mr. Edgin nevertheless wrote many letters to Ms. Heiser in which he repeatedly professed his love for her and his desire to work out their differences.

Mr. Edgin entered a guilty plea. The court sentenced him to a term of imprisonment of thirty-seven months, followed by three years of supervised release. As special conditions of release, the court ordered that Mr. Edgin not communicate with or travel to the state of residence of Ms. Heiser, Jerrad, or Mr. Highman.

II.

Mr. Edgin attacks his sentence on three grounds. First, he maintains the court erred in denying him a reduction under the Sentencing Guidelines for an offense involving "a single instance evidencing little or no deliberation." U.S.S.G. § 2A6.1(b)(2). Second, he contends the court erred in declining to reduce his sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Third, he maintains the court erred in imposing a special condition of release which prevents him from contact with his son.

We review the court's evidentiary determinations at a sentencing hearing for clear error. *United States v. Cruz*, 58 F.3d 550, 553 (10th Cir. 1995). We review the guidelines' application de novo. *Id.* "Conditions of supervised release, as ordered by the district court, are reviewed for abuse of discretion." *United States v. Pugliese*, 960 F.2d 913, 915 (10th Cir. 1992).

A.

We first consider Mr. Edgin's contention that the court erred in declining to reduce his sentence under U.S.S.G. § 2A6.1(b)(2), which provides for a four-point reduction in the base offense level "if the offense involved a single instance evidencing little or no deliberation." Although Mr. Edgin repeatedly called and wrote to Mr. Highman, he maintains he only threatened Mr. Highman during the May 4 telephone call.

At the sentencing hearing, both the parole officer and Mr. Edgin testified about the May 15 telephone call to Mr. Highman. The parole officer testified that "Miss Heiser contacted the FBI for a second time on May 16th and told the Special Agent Louks that she had received four phone calls the night before from Mr. Edgin and that he had repeated the threats that he had made to . . . Mr. Highman to her." *Id.* at 25. The parole officer understood Mr. Edgin had admitted to the FBI that he had made a second threatening phone call. Mr. Edgin said they "talked about the time that I'd left that message on his machine threatening to bust him up some." Rec., vol. II at 17. Questioned by his counsel as to whether he had made another threat in this second conversation, Mr. Edgin said, "I don't believe I did, no." *Id.* at 20. Questioned by the court, Mr. Edgin indicated that "I would feel bad if I did it, I didn't want to do it. I knew it wasn't the right thing to do but I'd tried everything else in the world, I tried writing him respectful letters, talking to him decently, and he just wants to keep going." *Id.* at 18. The court prodded Mr. Edgin to explain his actions. Eventually, he said he "was trying to find a way to scare [Mr. Highman] off and keep him from telling [Jerrad] that kind of stuff again, it served no purpose other than to hurt my son's feelings." *Id.* at 19. In light of this evidence, the district court did not clearly err in finding that Mr. Edgin's threats occurred on more than a single instance.[3]

---

[3] Mr. Edgin's reliance on *United States v. Pacione*, 950 F.2d 1348 (7th Cir. 1991), cert. denied, 505 U.S. 1229 (1992) and *United States v.*

Mr. Edgin next contends the district court erred in declining to reduce his sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. After Mr. Edgin pled guilty, he submitted a statement which concluded: "I accept responsibility for my actions. I know threatening someone over the telephone is wrong and in violation of the law." PSR at ¶ 14.

Although a guilty plea "will constitute significant evidence of acceptance of responsibility," the application notes indicate that "this evidence may be outweighed by conduct . . . that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 (n.3). Indeed, the court found Mr. Edgin's repeated attempts to contact Ms. Heiser demonstrated that he "stubbornly refuses to accept responsibility for, what after all, is a course of conduct." Rec., vol. II at 36. On appeal, Mr. Edgin counters that his contacts with Ms. Heiser are not relevant here because he never threatened her. However, the sentencing judge has a unique capacity to assess the defendant's demeanor as regards his acceptance of responsibility. See U.S.S.G. § 3E1.1 (n.5). "For this reason, the determination of a sentencing judge is entitled to great deference on review." *Id.* In light of Mr.

---

*Sanders*, 41 F.3d 480 (9th Cir. 1994), cert. denied, 115 S. Ct. 2010 (1995), is misplaced because both cases involved threats which occurred over the period of a few hours or less.

Edgin's determined efforts to contact Ms. Heiser and the other evidence presented at the sentencing hearing, the district court did not clearly err in finding that Mr. Edgin had not accepted responsibility.

C.

Finally, Mr. Edgin challenges the district court's imposition of a special condition of supervised release preventing him from contacting his son. At the close of the sentencing hearing, the court ruled "first, during supervised release Mr. Edgin may not have any communication in any form whatsoever, letter, telephone call, personally-delivered note, personal visit, visit through intermediary or any other form whatsoever, with Miss Heiser, with Jerrad Heiser, or with Mr. Highman." Rec., vol. II at 47. Second, the court barred Mr. Edgin from traveling to the state in which either Ms. Heiser or Jerrad resides. *Id.* Mr. Edgin contends the court did not have the statutory authority to impose these conditions with respect to Jarrad.

In most cases, a court may impose a term of supervised release after a term of imprisonment. 18 U.S.C. § 3583(a). A court enjoys broad discretion in setting a condition of supervised release, see *United States v. Pendergast,* 979 F.2d 1289, 1292 (8th Cir. 1992); *United States v. Showalter*, 933 F.2d 573, 574 (7th Cir. 1991), but such a term must meet three requirements:

The court may order, as a further condition of supervised release, to the extent that such condition--

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition . . . it considers to be appropriate.

18 U.S.C. 3583(d).

Under this statutory scheme, a condition of supervised release must be reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Moreover, the condition must involve no greater deprivation of liberty than is reasonably necessary given the needs "to afford adequate deterrence to criminal conduct," _id._ § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," _id._ § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," _id._ § 3553(a)(2)(D).[4]

---

[4] The sentencing guidelines echo the statute, see U.S.S.G. § 5D1.3(b), and add: "Recommended conditions of supervised release are set forth in § 5B1.4," _id._

Mr. Edgin raises the argument regarding his son for the first time on appeal. However, the Federal Rules of Criminal Procedure require that "[a]t the sentencing hearing, a court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence . . . ." Fed. R. Crim. P. 32(c)(1). The court imposed the special condition after it had resolved all the objections to the presentence report and had permitted Mr. Edgin to make a final statement. Mr. Edgin was afforded no notice of or opportunity to comment on the special condition. Under these circumstances, Mr. Edgin's attack on the special condition was not waived by his failure to assert it below. See *United States v. Esqueda-Moreno*, 56 F.3d 578, 580 (5th Cir.) ("[A] Rule 32 violation may be addressed for the first time on appeal . . . ."), cert. denied, 116 S. Ct. 348 (1995). See also *Burns v. United States*, 501 U.S. 129, 134 (1991) ("Federal Rule of Criminal Procedure 32 provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence.").

Indeed, the district court imposed the special condition at issue here at the close of the sentencing hearing without making factual findings or providing any reasons in support. As we have previously stated, "the district court must make a generalized statement of its reasoning for imposing a particular sentence so that appellate review does not flounder in the 'zone of speculation.'" *United States v.*

*Slater*, 971 F.2d 626, 633 (10th Cir. 1992)(quoting *United States v. Underwood*, 938 F.2d 1086, 1091-92 (10th Cir. 1991)). See also 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence . . . ."); *United States v. Zackson*, 6 F.3d 911, 923 (2d Cir. 1993) ("Zackson's claim of abuse of discretion cannot be properly reviewed without some statement in the record which reveals the justification for the imposition of the particular sentence.").

Accordingly, we remand the case for the district court to state its reasoning for imposing the special conditions of supervised release on Mr. Edgin. In so doing, we reiterate that section 3583(d)(2) requires conditions restricting a defendant's liberty to be especially fine-tuned to achieve the goals set forth in section 3553(a)(2)(B), (C) and (D).[5] The special condition regarding Mr. Edgin's son implicates Mr. Edgin's liberty. As a general matter, a father has a fundamental liberty interest in maintaining his familial relationship with his son. See *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). We "have, in the Fourteenth Amendment context, recognized that the relationship between parent and child is

_____

[5]While section 3583(d)(1) requires only that a condition of supervised release be "reasonably related" to certain ends, section 3583(d)(2) requires more: that the deprivation of liberty be "reasonably necessary" to deter Mr. Edgin from further criminal conduct, protect the public, or provide Mr. Edgin with educational training or medical care. Compare 18 U.S.C. § 3583(d)(2) with *Porth v. Templar*, 453 F.2d 330, 333 (10th Cir. 1971) ("The only limitation [on terms of probation] is that the conditions have a reasonable relationship to the treatment of the accused and the protection of the public.").

-11-

constitutionally protected." *Wise v. Bravo*, 666 F.2d 1328, 1331 (10th Cir. 1981); see also *id.* at 1336-37 (Seymour, J., concurring) (relating cases recognizing the "right to a relationship with one's child"). Unwed fathers' relationships are protected because of "a practical recognition that biology and association can together establish a relationship between father and child that may be essential to the happiness of both, even if the formality of marriage is missing." *Pena v. Mattox*, _ F.3d _, 1996 WL 269989, *6 (7th Cir. 1996). However, a lack of support for or relationship with the child is relevant to the weightiness of the unwed father's liberty interest. See generally *id.*

Mr. Edgin has not appealed the special conditions which prevent him from contact with Ms. Heiser or Mr. Highman. These terms of supervised release may suffice to deter further criminal conduct by Mr. Edgin directed at Ms. Heiser and Mr. Highman without a total prohibition on his contact with his son.[6] On remand, the district court is free to consider "fine tuning" the supervised-release conditions so that Mr. Edgin may not use contacts with his son to harass Ms. Heiser and Mr. Highman.

We **REMAND** to the district court for further findings.

---

[6] Although § 3583 does not directly contemplate Jerrad Heiser's interests, the terms of supervised release would prevent him from any contact with his father. Of course, state courts possess the jurisdiction and expertise to address these concerns, and Mr. Edgin's sentencing would in no way bar Mr. Edgin and Ms. Heiser from seeking to resolve their respective rights and Jerrad Heiser's interests.

No. 95-6409, United States v. Theodore J. Edgin.


Kelly, Circuit Judge, concurring.


I concur in the court's opinion, with the exception of the discussion concerning a constitutional liberty interest. There is no need to reach this issue even as "a general matter" because the statute, 18 U.S.C. § 3583(d)(2), limits the extent of any deprivation of liberty. At this point, we lack sufficient facts to decide whether Mr. Edgin has a constitutional liberty interest in his relationship with the child. I note that in both Quilloin v. Walcott, 434 U.S. 246, 254-56 (1978), and Pena v. Mattox, 84 F.3d 894, 899 (7th Cir. 1996), the biological fathers were unsuccessful in gaining relief on constitutional claims. In this case, any constitutional liberty interest would have to be balanced against the government's right to restrict the liberty of a convicted person such as Mr. Edgin, whether it be for punitive, deterrence or rehabilitative purposes.