F I L E D
United States Court of Appeals
Tenth Circuit

JUN 12 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

THEODORE J. EDGIN, also known as
Theodore John Edgin Jr., also
known as Theodore Edgin,

      Defendant-Appellant.

No. 96-6387
(D.C. CR-95-95-A)
(W. D. Okla.)

ORDER AND JUDGMENT*

Before ANDERSON, HENRY, and BRISCOE, Circuit Judges.

PER CURIAM.

     Defendant Theodore John Edgin appeals the district court's order, responding to

the remand from this court, which re-imposed as a condition of supervised release the

barring of him having any contact with his son. See United States v. Edgin, 92 F.3d 1044

(10th Cir. 1996), cert. denied, 117 S. Ct. 714 (1997). We exercise jurisdiction pursuant to

---

    *    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

28 U.S.C. § 1291 and affirm.[1]


## I. BACKGROUND

The circumstances surrounding Mr. Edgin's conviction and sentence are set forth in this court's previous opinion, see id., at 1046-47, and will be only briefly summarized here. In 1995, Mr. Edgin pled guilty to violating 18 U.S.C. § 875(c) by using a telephone to communicate a threat during a May 4, 1995 telephone call to Mr. My Highman. Mr. Highman had recently begun a romantic relationship with Mischelle Heiser, the mother of Mr. Edgin's son Jerrad. Ms. Heiser and Mr. Highman are now married.[2]

Mr. Edgin objected to various sections of the presentence report, arguing that he was entitled to a reduction in his offense level under certain provisions of the United States Sentencing Guidelines (USSG). At the sentencing hearing, the court heard testimony, overruled Mr. Edgin's objections, and sentenced Mr. Edgin to thirty-seven months' imprisonment followed by three years' supervised release. As a special condition of supervised release, the court ordered Mr. Edgin not to communicate with or travel to the state of residence of Mr. Highman, Mrs. Highman, or Jerrad.

---

[1]      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

[2]      Mischelle Heiser has changed her name to Mischelle Highman, and we will use her married name in the remainder of this order and judgment.

Mr. Edgin then appealed his sentence to this court, arguing that the district court should have reduced his offense level because the "offense involved a single instance evidencing little or no deliberation," see USSG § 2A6.1(b)(2), and because he had accepted responsibility for his conduct, see USSG § 3E1.1. Mr. Edgin also challenged the district court's imposition of the special condition of release preventing him from contacting Jerrad.

After considering Mr. Edgin's arguments on appeal, this court concluded that the district court did not err in refusing to reduce the offense level pursuant to USSG §§ 2A6.1(b)(2) and 3E1.1. See Edgin, 92 F.3d at 1047-48. However, as to the special condition of supervised release barring Mr. Edgin from contacting his son, this court remanded the case to the district court to state its reasoning. See id. at 1049. The panel opinion observed that the district court had imposed the disputed condition of supervised release at the close of the sentencing hearing without making factual findings and without allowing Mr. Edgin an opportunity to comment. It further noted that the statute concerning the imposition of conditions of supervised release, 18 U.S.C. § 3583, requires that conditions restricting a defendant's liberty must be "'reasonably necessary' to deter Mr. Edgin from future criminal conduct, protect the public, or provide Mr. Edgin with educational training or medical care." 92 F.3d at 1049 n.5 (quoting 18 U.S.C. § 3583(d)(2)). Because a father has a fundamental liberty interest in maintaining a relationship with his son, see id. at 1049 (citing Quilloin v. Walcott, 434 U.S. 246, 255

(1978) and <u>Wise v. Bravo</u>, 666 F.2d 1328, 1331 (10th Cir. 1981)), the court said, "[t]he special condition regarding Mr. Edgin's son implicates Mr. Edgin's liberty." <u>Id.</u> The court reasoned that there might be means less restrictive than prohibiting Mr. Edgin from having any contact with his son that would deter him from further criminal conduct. Thus, "[o]n remand, the district court [was] free to consider 'fine tuning' the supervised-release conditions so that Mr. Edgin may not use contacts with his son to harass [Mr. and Mrs. Highman]." <u>Id.</u> at 1050.

On remand, the government filed a motion to modify conditions of release. The government advised the district court that the District Court for Cass County, North Dakota had entered an order terminating Mr. Edgin's parental rights. Mr. Edgin responded that the North Dakota court's ruling could not be considered by the district court because it constituted new evidence not available at the time of his original sentencing hearing.

In November 1996, the district court entered a Suggestion of Mootness and Supplementary Findings. The district court stated that "[a]lthough Mr. Edgin may seek a reversal or withdrawal [of the North Dakota court's order], as of now he has no parental rights and thus no protected relationship with Jerrad." Rec. vol. IV, doc. 42 at 1. Thus, the court suggested, the issue regarding the condition of supervised release barring Mr. Edgin from contacting Jerrad had become moot.

The district court also entered supplemental findings supporting the prohibition of

4

Mr. Edgin's contacts with Jerrad during supervised release. It found that Mr. Edgin "is revealed as an obsessive, compulsive person purporting to love Mischelle Highman but in reality filled with venomous feelings toward her." Id. at 2. The court explained that this aspect of Mr. Edgin's personality "is relevant to relationships with Jerrad because the Court finds a high likelihood that his interest in the child is primarily to use him as a vehicle to become close to, or failing that, to hurt [Mrs. Highman]." Id. It noted that Mr. Edgin had shown little interest in Jerrad until Mr. and Mrs. Highman began their romantic relationship. Additionally, the court explained, Mr. Edgin had repeatedly ignored legal limitations placed upon him by courts, violating a condition of his pretrial bond by contacting Mrs. Highman and continuing to contact her after he was detained. See id. at 2-3. Because Mr. Edgin did not have a cooperative attitude, more finely tuned restrictions on his conduct during supervised release would not work. The court concluded: "I believe that he does pose a threat to Jerrad himself, that he lives on the edge of losing self-control and in a state of almost maniacal jealousy, and that he is entirely capable of destroying Jerrad so as to deny him to Mr. Highman." Id. at 3.

## II. DISCUSSION

On appeal, Mr. Edgin first argues that the district court violated the mandate set forth in this court's prior decision in this case. He maintains that the prior opinion implicitly concluded that the condition of supervised release prohibiting Mr. Edgin from

5

contacting Jerrad was beyond the district court's authority to impose. We disagree. The prior opinion states that "the district court is <u>free to consider</u> 'fine tuning' the supervised-release conditions." <u>Edgin</u>, 92 F.3d at 1050 (emphasis added). The opinion requires the district court to state its reasoning regarding the disputed condition of special release but does not foreclose the imposition of the same condition-provided that it is supported by sufficient findings. On remand, the district court made findings supporting the prohibition of contacts with Jerrad. Accordingly, the district court complied with the mandate of our prior opinion.

Mr. Edgin also argues that the district court erred by considering the termination of his parental rights by the District Court for Cass County, North Dakota. Citing <u>United States v. Warner</u>, 43 F.3d 1335, 1340 (10th Cir. 1994), he characterizes the North Dakota court's order as new evidence not available to the parties at the time of the original sentencing and thus not properly before the district court on remand. <u>See</u> Aplt's Br. at 10.

In <u>Warner</u>, we held that rehabilitative conduct of the defendant after the original sentencing proceeding could not be considered by the district court when the case was remanded for resentencing. <u>See</u> 43 F.3d at 1340. In reaching that conclusion, we stated that "the latitude permitted [on resentencing] is circumscribed by those factors the court could have considered 'at the first sentencing hearing.' Thus, events arising after that time are not within resentencing reach." <u>Id.</u> (quoting <u>United States v. Ortiz</u>, 25 F.3d 934, 935 (10th Cir. 1994)).

6

Warner does not address the circumstances at issue here--the post-sentencing entry of an order by a state court specifically addressing a matter that the district court has been directed to consider on remand. Nor does Warner discuss a situation involving mootness, a matter that "can be raised at any time either by the parties or by the court acting sua sponte." Barilla v. Ervin, 886 F.2d 1514, 1519 (9th Cir. 1989); see also McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996) (stating that "[b]ecause mootness is a matter of jurisdiction, a court may raise the issue sua sponte").

Nevertheless, we need not decide whether Warner applies to the instant case. Here, the district court did not rely exclusively on the North Dakota court's order in reaching its decision to re-impose the disputed condition of supervised release. The court made alternative findings based entirely on evidence before it at the time of the first sentencing proceeding. These factual findings are amply supported by the record and, indeed, are not challenged by Mr. Edgin in this appeal.

Accordingly, the decision of the district court re-imposing the condition of supervised release barring Mr. Edgin from contacts with his son Jerrad is AFFIRMED.

The mandate shall issue forthwith.

Entered for the Court,

Patrick J. Fisher, Jr.
Clerk of Court