**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GLORIA TENEUVIAL WARD, aka
Tamara Joy Mangum, Tammy
Christensen, Tammy Mangum,

Defendant-Appellant.

No. 97-4152
(D.C. No. 97-CR-122-001)
(D. Utah)

---

ORDER AND JUDGMENT[*]

---

Before SEYMOUR, Chief Judge, BRORBY, and BRISCOE, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Gloria Teneuvial Ward was convicted of two counts of social security fraud, in violation of 42 U.S.C. § 408(a)(3), and two counts of making a false statement, in violation of 18 U.S.C. § 1001. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm and remand.

I.

Ward married Paul Daniel Christensen in 1979 and Leslie Joy Christensen was born in 1980. Ward and Christensen were divorced in 1984. Ward then lived with Robert Gunn for a short time and her second child, Courtnie Joy Christensen, was born on November 26, 1985. In early 1986, Ward requested that the State of Utah collect child support obligations from Gunn, and declared in an affidavit:

> 1. Between December 1984 and February 1985 I had sexual intercourse with Robert Q. Gunn.
> 2. The child, Courtnie Joy Christensen was born to me November 26, 1985 on which date I was not married to Robert Q. Gunn.
> 3. During the probable time of conception of Courtnie Joy Christensen, I had sexual intercourse with no male other than Robert Q. Gunn.
> 4. Upon my best knowledge and understanding, I believe Robert Q. Gunn to be the father of Courtnie Joy Christensen.

Record Supp. I, Exh. 1. Gunn submitted to a blood test and the results showed a 99.44 percent chance he is Courtnie's father. Gunn acknowledged paternity and has paid child support and maintained insurance coverage for Courtnie since

1986. [1]

Paul Christensen died on January 8, 1991, and Ward received benefits on behalf of Leslie through the SSA Survivors Insurance Program. On January 19, 1994, Ward applied for social security benefits for Courtnie by claiming she was also the child of Christensen. After receiving nine months of retroactive benefits for Courtnie, Ward filed another document with the social security administration on June 15, 1994, seeking support payments for Courtnie from the date of Christensen's death. Ward's efforts were ultimately successful and she received a total of $32,345 in benefits for Courtnie.

The social security administration received a tip from Paul Christensen's sister in 1995 and its subsequent investigation revealed Ward's sworn statements declaring Gunn to be Courtnie's father. Ward was charged with two counts of social security fraud and two counts of making a false statement to a government agency. Ward insisted on representing herself at trial and the court appointed "stand-by counsel." Ward's request to have Christensen's body exhumed to perform DNA testing was denied. Instead, the court ordered Gunn and Courtnie to undergo another blood test. This test concluded Gunn was Courtnie's father with a probability of paternity of 99.9999999 percent. The government's expert

---

[1] Gunn ceased making support payments in 1996 when he and his wife gained custody of Courtnie. Courtnie remains in their custody.

testified at trial that, in his opinion, "Robert Gunn is the biologic father of Courtnie Joy Christensen." Record II at 55.

A jury convicted Ward of all charges. She was sentenced to fifteen months' imprisonment and thirty-six months' supervised release and ordered to make restitution in the amount of $32,345. On appeal, she argues (1) there is no conclusive evidence she filed a false claim; (2) the government intentionally destroyed evidence that was instrumental to her defense; (3) the sentencing judge was biased; (4) the judge failed to provide her with a competency hearing; (5) the judge erroneously imposed special conditions to her supervised release sentence.

## II.

We acknowledge that Ward is proceeding pro se on appeal. When a plaintiff is proceeding pro se, we must construe pleadings liberally, applying a less stringent standard than applicable to pleadings filed by lawyers. Whitney v. State of New Mexico, 113 F.3d 1170, 1173 (10th Cir. 1997). However, we "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Id. at 1173-74.

## III.

**Sufficiency of evidence**

Ward claims there is no conclusive evidence she filed false claims. She essentially attacks the fact that the district court denied her motion to exhume

Christensen's body for DNA testing and the fact that the government did not present canceled checks from the social security administration. We construe this argument as a challenge to the sufficiency of the evidence. In reviewing Ward's challenge, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In answering this question, we may neither weigh conflicting evidence nor consider the credibility of witnesses. United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997). Instead, we must consider the evidence and all reasonable inferences in the light most favorable to the government. See United States v. Reddeck, 22 F.3d 1504, 1507 (10th Cir. 1994).

To prove Ward committed social security fraud, the government was required to prove she "ma[de] or cause[d] to be made any false statement or representation of a material fact for use in determining rights to payment under [the Federal Old-Age, Survivors, and Disability Insurance Benefits Act]." 42 U.S.C. § 408(a)(3). To establish Ward made a false statement to a government agency, the government was required to prove she "knowingly and willfully" "(1) falsif[ied], conceal[ed], or cover[ed] up by any trick, scheme, or device a material fact; (2) ma[de] any materially false, fictitious, or fraudulent statement or representation; or (3) ma[de] or use[d] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry"

in any matter within the jurisdiction of the United States government. 18 U.S.C. § 1001.

We conclude there was ample evidence for the jury to conclude Ward committed social security fraud and made false statements to a government agency. By representing Christensen was Courtnie's father, Ward made a materially false representation to the government. The government was not, as Ward apparently contends, required to exhume Christensen's body to prove he was not Courtnie's father. The government relied instead upon blood tests to prove Gunn is Courtnie's father. Moreover, the government was not required to present canceled checks to prove Ward received social security funds. The government proved Ward received social security funds by offering into evidence a certified social security payment history.    See Record Supp. I, Exh. 23.

**Discovery**

Ward argues the government intentionally destroyed evidence that was material to her defense when it destroyed her 1985-1986 social security file (presumably her file from the State of Utah). This argument is without merit. There is no indication Ward was denied access to any document that would have been available if the file had not been destroyed. Copies of all relevant documents were available at trial. Further, there is no indication any destroyed

-6-

document would have been favorable to her defense because the file pertained to her earlier assertions that Gunn was Courtnie's father. Ward entered into a stipulation with the government concerning the nonexistence of the file. The stipulation stated: "Such parts of the file as have been located have been given to all parties. The non-existence of the file is not attributed to bad, evil or illegal motive or malicious intent on the part of any party to this action." Record III at 91-92. Therefore, Ward cannot argue the government's failure to produce the destroyed file violated her rights.

**Bias in sentencing**

Ward claims the sentencing court was biased, but does not indicate how it was biased. Ward did not seek the judge's recusal before sentencing. As evidenced by the record, the judge's conduct during trial was proper and he based the sentence on information in the presentence report and applicable sentencing guidelines. See United States v. Lowe , 106 F.3d 1498, 1504 (10th Cir.), cert. denied 117 S. Ct. 2494 (1997) (no bias where judge based sentence on reliable, undisputed information in presentence report); United States v. Gigax , 605 F.2d 507, 514 (10th Cir. 1979) (judge's comments during sentencing did not demonstrate bias).

**Competency hearing**

Ward complains the court failed to conduct a competency hearing. A trial court need not conduct a competency hearing when there has been only minimal or no evidence of incompetence. In reviewing whether the trial court should have held a competency hearing, we must determine "'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.'" United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1233 (10th Cir. 1998) (quoting United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986)). To raise a substantial question requiring a competency hearing there must be some evidence to create doubt on the issue. Merely raising the issue is insufficient. Gutierrez-Hermosillo, 142 F.3d at 1233.

> The Supreme Court has described what evidence triggers the need for a competency hearing: "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient."

Castro v. Ward, 138 F.3d 810, 818 (10th Cir. 1998) (quoting Drope v. Missouri, 420 U.S. 162, 180 (1975)).

We have reviewed the entire record on appeal and conclude there is no indication the court should have experienced doubt concerning Ward's competency to stand trial. Ward was lucid during trial. She filed numerous

pretrial motions, argued her motions to the court, and cross-examined several witnesses. We find no error in the court's failure to conduct a competency hearing.

**Special conditions to supervised release**

Ward contends the district court erroneously imposed special conditions to her supervised release sentence. We review the district court's imposition of conditions of supervised release for abuse of discretion. See United States v. Pugliese , 960 F.2d 913, 915 (10th Cir. 1992). The court ordered the following conditions:

> 1. The defendant shall participate in a mental health treatment program under a co-payment plan, as directed by the probation office.
> 2. The defendant shall maintain full-time verifiable employment or participate in academic or vocational development throughout the term of supervision as deemed appropriate by the probation office.
> 3. The defendant shall not associate with individuals who are members or associates of the House of Chaney.

Record I, Doc. 61 at 5. Ward did not object to these conditions during sentencing.

Without making a specific argument challenging each specific condition, Ward generally argues the special conditions to her supervised release were wrongfully imposed. However, since we easily conclude the court did not abuse

its discretion by requiring her to participate in a mental health treatment plan and maintain full-time employment, we focus our discussion on the condition that she not associate with individuals who are members or associates of the House of Chaney. [2]

The sentencing court generally enjoys broad discretion in setting conditions of supervised release. See United States v. Prendergast, 979 F.2d 1289, 1292 (8th Cir. 1992); United States v. Showalter, 933 F.2d 573, 574 (7th Cir. 1991). However, a special condition of supervised release must (1) be reasonably related to (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) affording adequate deterrence to criminal conduct; or (c) providing the defendant with needed education or vocational training, medical care, or other correctional treatment; (2) "involve[] no greater deprivation of liberty than is reasonably necessary" to further these goals, and (3) be "consistent with any pertinent policy statements issued by the Sentencing

---

[2] The House of Chaney has been described by the media as a "'spiritual family' of about 10 ex-communicated Mormons who live in the Utah County area." Tom Zoellner, *Woman Gets 15 Months for Social Security Fraud*, SALT LAKE TRIB., Sept. 6, 1997, at D5. Apparently, one of the group's beliefs is that girls should be married when they begin to menstruate. Stephen Hunt, *Girl Says Dad Forced Her To Perform Sex Group's Leader May Face Trial*, SALT LAKE TRIB., June 29, 1996, at E1. The House of Chaney leader, John Perry Chaney, was married to Ward's then fourteen-year-old daughter Leslie. He was convicted in state court in June 1997 for arranging the marriage of his own thirteen-year-old daughter to a forty-eight-year-old follower. Stephen Hunt, *Mother Guilty of Social Security Fraud*, SALT LAKE TRIB., June 28, 1997, at B2.

Commission pursuant to 28 U.S.C. 994(a)." 18 U.S.C. 3583(d). See United States v. Edgin , 92 F.3d 1044, 1048-49 (10th Cir. 1996), cert. denied 117 S. Ct. 714 (1997). As long as the special condition fulfills these statutory requirements, "[a] district court may include conditions that restrict fundamental rights, such as freedom of speech and freedom of association, although in such cases we must review the restrictions with particular care." United States v. Hughes , 964 F.2d 536, 542 (6th Cir. 1992) (citing United States v. Peete , 919 F.2d 1168, 1181 (6th Cir. 1990)).

In Showalter , the court required defendant, as a special condition of supervised release, to stop associating with the organization known as the skinheads and all other neo-Nazi organizations. The district court explained the restriction was necessary because "those groups embrace violence and the threat of violence as a method of advancing their views," and concluded defendant's association "would create a high likelihood that you would be drawn into that same behavior." 933 F.2d at 575. See United States v. Turner , 44 F.3d 900, 903 (10th Cir. 1995) (sentencing court did not abuse discretion by imposing special condition that defendant-abortion clinic protester not "harass, intimidate or picket in front of any gynecological or abortion family planning services center"); United States v. Bortels , 962 F.2d 558, 559-60 (6th Cir. 1992) (sentencing court did not abuse discretion in imposing special condition that defendant not associate

with her fiancé for one year since defendant was convicted of assaulting, resisting, or interfering with a United States Deputy Marshal in connection with a high-speed chase to help avoid the capture of her fiance).

In Edgin, 92 F.3d 1044, this court considered a claim that the district court erred by imposing a special condition of supervised release that prohibited defendant from associating with his son. Since the district court failed to state its reasoning for imposing the condition, we remanded without determining whether the court abused its discretion in imposing the condition. We noted the court had imposed the condition after resolving all objections to the presentence report and after permitting defendant to make a final statement, and noted the condition violated defendant's fundamental right to maintain a familial relationship with his son.

Ward's relationship with members of the House of Chaney was not discussed during her sentencing hearing before the court announced its intention to impose the special condition. The court did not make any findings concerning whether association was harmful to Ward or would create a high likelihood of recidivism. The court did not relate Ward's association with members of the House of Chaney to the instant charges. In fact, from the record it appears her association began *after* she committed the instant offenses. Since this special condition restricts Ward's right to free association and arguably places limitations

on her right to maintain a relationship with her husband, who is also a member of the House of Chaney, the district court should have stated its reasoning for imposing this condition. As in <u>Edgin</u>, the court imposed the special condition "at the close of the sentencing hearing without making factual findings or providing any reasons in support." 92 F.3d at 1049.

IV.

We AFFIRM Ward's convictions and REMAND for further findings on imposition of the special condition of supervised release that prohibits Ward from associating with members of the House of Chaney.

Entered for the Court

Mary Beck Briscoe
Circuit Judge