USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1817

 UNITED STATES,

 Appellee,

 v.

 JEFFREY WAYNE FREEMAN,

 Defendant, Appellant.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 ____________________

 Before

 Boudin, Circuit Judge,

 Magill, Senior Circuit Judge,

 and Lynch, Circuit Judge.

 _____________________

 Jeffrey Silverstein, by appointment of the Court, with whom
Billings & Silverstein was on brief, for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with
whom Jay P. McCloskey, United States Attorney, was on brief, for
appellee.

 ____________________

 May 17,1999
 ____________________ MAGILL, Senior Circuit Judge. Jeffrey Wayne Freeman
appeals his sentence of thirty months imprisonment imposed after he
pleaded guilty to transmitting a threatening communication in
interstate commerce in violation of 18 U.S.C. 875(c). He argues
that the district court erred in concluding that his offense did
not "involve[] a single instance evidencing little or no
deliberation." U.S.S.G. 2A6.1(b)(2) (1995). We affirm.
 I. 
 Between the morning of February 24 and the evening of
February 25, 1997, Freeman made a total of eight interstate
telephone calls to Child Find of America, Inc.'s hotline. This
hotline is dedicated to locating missing children. During the
first call, Freeman told a hotline operator that he had abducted
and sexually forced himself on his fourteen-year-old stepdaughter. 
During each of the next seven calls, Freeman graphically explained
the way in which he had tortured and sexually assaulted the girl
since his previous call. During the second call, which lasted
approximately seventy-five minutes, Freeman told the hotline
operator that he could kill the girl and leave her. During one of
his later calls, he told the hotline operator that he was abusing
the girl and that he might leave her to die. These phone calls
ranged from a few minutes to seventy-five minutes in length and
were placed from different locations.
 After tracing the calls, the police apprehended Freeman. 
As it turned out, Freeman had not abducted his stepdaughter and, in
fact, did not have a stepdaughter. Rather, he was playing an
elaborate prank on the hotline operator. According to Freeman, he
saw a commercial advertising the hotline when he was intoxicated
and decided to place the calls. Freeman was subsequently indicted
on two counts of transmitting threatening communications in
interstate commerce in violation of 18 U.S.C. 875(c). Pursuant
to a plea agreement, Freeman entered a plea of guilty to one count
of transmitting a threatening communication in interstate commerce,
and the Government dismissed the second count.
 Based on this plea, the district court determined
Freeman's base offense level to be twelve. See U.S.S.G. 2A6.1(a)
(1995). At the sentencing hearing, Freeman requested that his
offense level be reduced by four levels on the ground that his
offense "involved a single instance evidencing little or no
deliberation." Id. 2A6.1(b)(2). The court disagreed with
Freeman and sentenced him to thirty months imprisonment. Freeman
now appeals the district court's refusal to grant the reduction.
 II.
 The sole issue raised on appeal is whether the district
erred in denying Freeman a reduction under 2A6.1(b)(2). This
court reviews the district court's legal interpretation of the
Sentencing Guidelines de novo. See United States v. Nicholas, 133
F.3d 133, 134 (1st Cir. 1998). We defer to the trial court's
factual findings unless they are clearly erroneous. See United
States v. Voccola, 99 F.3d 37, 43 (1st Cir. 1996).
 In relevant part, 2A6.1(b)(2) provides that if "the
offense involved a single instance evidencing little or no
deliberation, decrease [the offense level] by 4 levels." The
departure is applicable, therefore, only if the offense involves a
single instance and that single instance evidences little or no
deliberation. See United States v. Stevenson, 126 F.3d 662, 665
(5th Cir. 1997) ("[T]he fact that [defendant mailed only one
letter] does not win the day . . . because the [Guideline] does not
state that the fact an act is a single instance in itself lowers
the penalty.").
 A. Single Instance
 We first consider Freeman's contention that his offense
involved only a single instance. Although he made eight calls to
the hotline, Freeman maintains that he only communicated a threat
during the seventy-five minute phone call. The facts, however,
demonstrate that he made at least two threatening communications. 
 The appropriate standard for determining if a defendant's
communication constitutes a "threat" is "'whether [the defendant]
should have reasonably foreseen that the statement he uttered would
be taken as a threat by those to whom it is made.'" United States
v. Whiffen, 121 F.3d 18, 21 (1st Cir. 1997) (quoting United States
v. Fulmer, 108 F.3d 1486, 1491 (1st Cir. 1997)); see also United
States v. Alkhabaz, 104 F.3d 1492, 1495 (6th Cir. 1997) ("[T]o
constitute 'a communication containing a threat' under Section
875(c), a communication must be such that a reasonable person (1)
would take the statement as a serious expression of an intention to
inflict bodily harm . . . and (2) would perceive such expression as
being communicated to effect some change or achieve some goal
through intimidation . . . ."); United States v. Himelwright, 42
F.3d 777, 782 (3d Cir. 1994) (holding that to establish violation
of 875(c), "the government b[ears] only the burden of proving
that [the defendant] acted knowingly and willfully when he placed
the threatening phone calls and that those calls were reasonably
perceived as threatening bodily injury"). Freeman made a total of
eight telephone calls. In his first call, he told the hotline
operator that he had abducted his stepdaughter and sexually
assaulted her. During his second phone call, which lasted seventy-
five minutes, he graphically described the ways in which he had
sexually tortured the girl since his first phone call and added
that he "can kill her and leave where she is now." Spiro Aff. at
1. Freeman concedes that this phone call constitutes a threatening
communication. In each of Freeman's subsequent calls, he described
in explicit detail the way in which he had supposedly tortured and
sexually assaulted the girl since the immediately preceding phone
call. In one of these later phone calls, he told the operator that
"he was abusing her and . . . may just leave her to die in the
basement." Id. at 2. Freeman should have reasonably foreseen that
this call would also be taken as a threat. Indeed, Freeman should
have reasonably foreseen that the hotline operator would take each
of his calls "updating" the hotline operator about the ongoing
sexual torture as at least an implicit threat to continue torturing
the girl for an indefinite period of time and to later call again
and describe the continuing torture. The district court thus did
not err in concluding that Freeman's conduct involved the
transmission of more than one threatening communication. See
United States v. Edgin, 92 F.3d 1044, 1047 (10th Cir. 1996)
(holding that defendant's conduct involved more than a single
instance, notwithstanding fact that defendant pleaded guilty to
only one count of making a threatening communication, when evidence
showed that he made two threatening communications).
 Perhaps recognizing that his conduct included more than
one threatening communication, Freeman contends that the term
"single instance" should be defined as "single episode of
threatening conduct" rather than as "single threat." See United
States v. Sanders, 41 F.3d 480, 484 (9th Cir. 1994) (holding that
"conduct involving several threats may constitute a single instance
or episode within the meaning of 2A6.1(b)(2)"). Even if we were
inclined to agree, we believe that the phrase "'[s]ingle instance'
connotes [both] a temporal relationship [and] a 'single purpose' or
'single scheme.'" Id. Although Freeman may have had the
ostensible "single purpose" or engaged in the "single scheme" of
making a hotline operator believe that he was sexually assaulting
a girl, would continue to do so for the indefinite future, and
might eventually kill her, the district court did not err in
concluding that Freeman's eight telephone calls to the hotline over
the course of two days constituted more than a "single instance." 
See id. (explaining that reduction "might not apply where the
defendant made a number of similar threats over an extended period
of time"); United States v. Bellrichard, 801 F. Supp. 263, 266 (D.
Minn. 1992) ("[G]iven the volume and nature of defendant's written
communications, the conduct . . . could hardly be viewed as a
'single instance' under the guidelines."), aff'd, 994 F.2d 1318
(8th Cir. 1993); cf. Edgin, 92 F.3d at 1047 & n.3 (affirming no
reduction where conduct involved threats made eleven days apart);
United States v. Pacione, 950 F.2d 1348, 1356 (7th Cir. 1991)
(noting in passing that district court granted reduction where
conduct involved threats made over the period of a few hours or
less). B. Little Or No Deliberation
 Furthermore, even if we were to assume that Freeman's
conduct involved only a "single instance," we find no error in the
district court's finding that Freeman's conduct evidenced more than
"little or no deliberation." Freeman first obtained the telephone
number to the hotline. He then called the hotline eight different
times during the course of two days. For each call, he had to
remember the phone number (or look it up), dial the number, speak
to the operator, remember the contents of the previous call, and
fabricate new details concerning the way in which he was supposedly
torturing his stepdaughter. See Sanders, 41 F.3d at 485 (asserting
that deliberation is shown where defendant tailored his statements
for particular victims); United States v. Fann, 41 F.3d 1218, 1219
(8th Cir. 1994) (per curiam) (stating that deliberation is shown
when defendant "added and subtracted details as he issued his
various statements"); cf. Stevenson, 126 F.3d at 665 (holding that
defendant's actions in connection with mailing single letter showed
deliberation where they "involved the deliberate securing of
stationery and postage, the composition of a letter, the search for
an address, and the act of taking the letter to be mailed"). He
placed these phone calls from at least two different locations. 
During two separate calls, in addition to giving graphic depictions
of the manner in which he had tortured the girl, he intimated that
he could kill her or leave her to die. With respect to each phone
call, and certainly the multitude of phone calls in aggregate,
"[t]here were many steps along the way in which he could have
stopped himself, but he didn't." Stevenson, 126 F.3d at 665. The
mere fact that he was supposedly drunk when placing each of the
calls does not require a finding of little or no deliberation. See
Sanders, 41 F.3d at 482, 485.
 III.
 For the foregoing reasons, we affirm the district court.