**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRIAN SCHOENHERR, a/k/a Flyin'
Brian,

Defendant - Appellant.

No. 12-3032

(D.C. No. 5:11-CR-40008-JAR-1)

(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **MCKAY**, and **TYMKOVICH**, Circuit Judges.

---

A federal undercover investigation of the Iron Horsemen Motorcycle Club

caught Defendant Brian Schoenherr dealing drugs. He pleaded guilty to

distributing cocaine, *see* 21 U.S.C. § 841(a), and received a sentence that included

a three-year term of supervised release. As a special condition of supervised

release, the district court forbade Defendant from associating with any member of

the Iron Horsemen or its allied motorcycle gangs during the three-year term.

Defendant appeals only the special condition, claiming that it is too broad to

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

satisfy 18 U.S.C. § 3583(d) and that it violates his First Amendment right to freedom of association. Because Defendant failed to present these claims to the district court, we review for plain error. Holding that any error was not "plain," we affirm.

## I.    BACKGROUND

Undercover agents of the federal Bureau of Alcohol, Tobacco, and Firearms (ATF) first encountered Defendant in Kansas in the summer of 2009, forming a relationship with him by helping him buy drugs on more than one occasion. When one of the ATF agents, Special Agent Wesley Williamson, later visited Defendant in his hometown near Rochester, New York, Defendant bought cocaine for him at a local strip club. In October 2009 Defendant mailed 53.79 grams of cocaine from New York state to Williamson in Kansas. Defendant was indicted for the October mailing and pleaded guilty in the United States District Court for the District of Kansas.

At the sentencing hearing Williamson testified that Defendant had been a "nomad" for the Iron Horsemen. R., Vol. 3 at 23. The presentence report (PSR) likewise identified Defendant as a nomad for the club, and Defendant raised no objection to that description. Williamson explained that a nomad belongs to no particular chapter of the Iron Horsemen but instead serves as a roving representative of the national organization, helping to establish new chapters and to recruit new members around the country.

The district court admitted three exhibits that related to the Iron Horsemen's violent and criminal activity. The first exhibit was a bulletin released in September 2010 by the police department of Portland, Maine, alerting officers that a member of the Iron Horsemen had recently been killed in a shootout with law enforcement in Cincinnati. The second was a 2009 bulletin from the Ohio State Highway Patrol warning that members of the Ohio Iron Horsemen Motorcycle Club were transporting explosives from Louisiana to Ohio. The third was a collection of summaries compiled by the ATF that described some 20 incidents of violent or criminal activity by Iron Horsemen members in ten different states between 2004 and 2011. Williamson testified that Defendant probably would have been aware of these kinds of incidents because of his role as a nomad with the club.

The court also reviewed three ATF reports of Defendant's illicit behavior during his association with the Iron Horsemen. The reports recounted his sales of cocaine to both Williamson and a confidential informant while on the road with club members in July 2009; Defendant's discussion with Williamson in June 2009 of a possible conflict with other motorcycle clubs; and Defendant's suggestion to Williamson in June 2009 that the two of them should rob nightclub patrons of their gold jewelry, making sure not to wear their Iron Horsemen patches while doing so. All three reports referred to the Iron Horsemen as an outlaw motorcycle gang. Defendant did not object to that language.

Defense counsel called Mark Dibiase, an acquaintance of Defendant from the Rochester area, to testify to Defendant's character. Dibiase spoke of Defendant's hard work in helping Dibiase with his janitorial business; Defendant's devotion to his mother, who was afflicted with dementia; and Defendant's regrets over his past drug use, which apparently started after his girlfriend died suddenly from an aneurysm. Dibiase described himself as a committed Christian and mentioned his membership in the Christian Motorcycle Association.

In his closing statement defense counsel urged a sentence of only probation so that Defendant could tend to his ailing mother. The government advocated a sentence within the Guidelines range. According to the PSR, whose findings the district court adopted, Defendant's offense level was 15 and his criminal-history category was I, yielding an advisory Guidelines range of 18 to 24 months' imprisonment.

Before announcing Defendant's sentence the court made the following comment on Defendant's involvement in the Iron Horsemen:

> This is a serious offense. Having heard the evidence and examined the exhibits, I'm absolutely convinced that the Iron Horsemen Motorcycle Club is not some benign motorcycle club. And there are plenty of them that are. There are motorcycle clubs comprised of people that are all law enforcement officers. There are motorcycle clubs that engage in all kinds of community services and do wonderful things in the community. And then there are other ones that I guess we call outlaw motorcycle gangs that perhaps have good people in them and also have people that are involved in criminal

-4-

activity.  And it would appear the Iron Horsemen Motorcycle Club is one such club.

*Id.* at 84–85.  The court granted a downward variance and imposed a sentence of 12 months and one day, to be split between six months' imprisonment and six months' home detention.

Most relevant to this appeal, the court also imposed a three-year term of supervised release, which included a restriction on motorcycle-gang activity. Before hearing from counsel and Defendant and then imposing the sentence, the court announced its tentative sentence.  It explained the proposed gang condition as follows:

> I'm also going to impose what I shorthand call a gang condition which prohibits [Defendant] from any association with the Iron Horsemen Motorcycle Club or any of its associate clubs such as the Sons of Silence.  Literally with any clubs because the evidence that I heard is that there are two categories.  There are the ones that are associates and friends, and the ones that they get into fights and club each other over the head and shoot at each other and shoot at the police when they arrive.  So this gang condition really applies to any motorcycle clubs.
>
> Frankly, it would seem that although there's been some statement about [Defendant] getting emotional support from his long-term friends in the Iron Horsemen Motorcycle Club, the Court thinks that's not the kind of people that [Defendant] should associate with and will associate with now that I've given him this variance.  He needs to be associating with people like Mr. Dibiase and his friends, not people that think it's okay to associate with criminals.
>
> Because there are criminals in this motorcycle club.  Maybe there's a lot of nice people, but there's also criminals.  And to someone that's going to be under this Court's supervision, or any Court's supervision, should not be associating with any criminals.

-5-

*Id.* at 88–90.  The court then asked defense counsel whether Defendant had any

objections to the proposed sentence.  With respect to the gang condition, defense

counsel said:

> There have been a lot of people who have known his mother and him
> for a long time.  I wonder if the Court might make the condition that
> [Defendant] not associate with people with a criminal record and not
> participate in any motorcycle club activities unless approved by the
> probation office.
>
> For instance, Mr. Dibiase belongs to a Christian motorcycle
> club.  Maybe he can switch to that if the probation officer would
> approve.  But if the Court would more specifically state that he may
> not participate in Iron Horsemen events or allied events and—but
> that he could still—or with people who have a prior criminal record.
> I think that addresses the Court's issue and still doesn't get close to
> the line of the association.
>
> So as stated, I would formally object to that condition, but I
> think my proposal would solve any problems that the Court might
> have.  Or hopefully it will.

*Id.* at 94–95.  The court decided to limit the gang restriction somewhat, and it is

set forth in the judgment as follows:

> The defendant shall not be a member of the Iron Horsemen
> Motorcycle Club (IHMC) and allied motorcycle gangs, participate in
> any gang-related activities, or associate with any gang members
> during the term of supervision.  If the defendant can become a
> member of a legitimate motorcycle club will be left to the discretion
> of the U.S. Probation Office.

*Id.*, Vol. 1 at 57.

Defendant appeals his sentence.  He does not challenge the requirement that

he not be a member of the Iron Horsemen and allied gangs, but only the

requirement that he not associate with members of the gangs. He contends that this portion of the gang condition is unlawful for two reasons: (1) it violates the requirements of § 3583(d) that a condition of release be "reasonably related to the factors set forth" in 18 U.S.C. § 3553(a) and "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in § 3553(a); and (2) it violates his First Amendment right to freedom of association.

## II.    DISCUSSION

Because Defendant and the government dispute the proper standard of review, we address that issue first. We then address the merits of Defendant's statutory and constitutional arguments.

### A.    Standard of Review

We agree with the government that defense counsel's objection at sentencing did not adequately convey to the district court either of the two theories on which Defendant now relies. First, defense counsel never cited § 3583(d) or quoted (or even paraphrased) its pertinent language. Nor did counsel clearly distinguish between the restriction on Defendant's being a member of certain gangs (a restriction not challenged on appeal) and the restriction on Defendant's association with gang members (the restriction challenged on appeal). Instead, counsel merely proposed a less stringent alternative to the gang condition (that Defendant not participate in events of the Iron Horsemen or allied groups or associate with people who have a criminal record without the probation

-7-

officer's approval) and submitted that his proposal "addresses the Court's issue and still doesn't get close to the line of the association" and that it "would solve any problems that the Court might have." R., Vol. 3 at 95. This statement was too imprecise to alert the district court that Defendant was raising his present objection under § 3583(d). A party must clearly raise arguments in district court so that the opposing party is alerted to the need to make a record and so the court can avoid or cure any error, making appeal of the issues unnecessary. *See United States v. Burke*, 571 F.3d 1048, 1057 (10th Cir. 2009). Defendant may have offered a remedy in the form of an alternative condition of supervised release, but he did not suggest that his alternative was required by a specific statute.

As for Defendant's constitutional argument, he concedes that his counsel did not use the specific terms "First Amendment" or "constitutional freedom of association" in objecting to the gang condition. But he argues that counsel's remark that the proposed alternative "doesn't get close to the line of the association" was clear enough to apprise the district court of the same constitutional theory he now asserts on appeal. We think otherwise. In a sentencing hearing devoid of discussion of any constitutional guarantees, counsel's use of the term *the association* (a peculiar way indeed to refer to the constitutional right) without any citation to authority, did not put the court on notice that Defendant was invoking his rights under the First Amendment. And, as previously noted in the discussion of Defendant's statutory claim, counsel did

not clearly distinguish between Defendant's not being a club member and his not associating with members.

Defendant is correct that "[w]e conduct plain-error analysis less rigidly when reviewing a potential constitutional error." *United States v. Hauk*, 412 F.3d 1179, 1194 (10th Cir. 2005) (internal quotation marks omitted). But that proposition concerns *how* we conduct plain-error review, not *whether* our standard of review is plain error. Accordingly, we hold that Defendant's issues on appeal were not preserved below, and therefore our standard of review is plain error. *See United States v. Hall*, 625 F.3d 673, 684 (10th Cir. 2010). To prevail on plain-error review, Defendant has the burden of demonstrating (1) that the district court committed error; (2) that the error was plain; (3) that the error affected his substantial rights; and (4) that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Interpreting the second prong of this test, the Supreme Court has explained that an error is plain if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). We have further stated that "[a]n error is clear where the Supreme Court or this court has addressed the issue or where the district court's interpretation was clearly erroneous." *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011) (brackets and internal quotation marks omitted). This second prong is dispositive

of Defendant's appeal.  Because Defendant must prevail on all four prongs to be entitled to relief, we deny relief based on his failure to establish the second prong. *See Hall*, 625 F.3d at 684 ("The defendant has the burden of establishing all four elements of plain error.").

### B.    Defendant's Statutory Claim

Section 3583(d) permits a district court to impose any special condition of supervised release described by 18 U.S.C. § 3563(b).  One permitted condition is that the defendant "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons."  18 U.S.C. § 3563(b)(6).  The gang condition is such a condition.  In crafting the condition, however, the district court must obey several limits imposed by § 3583(d).  First, the condition must be "reasonably related to the factors set forth" in § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant"); (a)(2)(B) (the need "to afford adequate deterrence to criminal conduct"); (a)(2)(C) (the need "to protect the public from further crimes of the defendant"); and (a)(2)(D) (the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").  *Id.* § 3583(d)(1).  Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in § 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D).  *Id.* § 3583(d)(2).

And third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(3).

The district court "enjoys broad discretion in setting a condition of supervised release," so long as it abides by these statutory requirements. *United States v. Begay*, 631 F.3d 1168, 1174 (10th Cir. 2011) (internal quotation marks omitted). Although the court must provide reasons for the condition it decides to impose, *see United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1996), it need not offer a detailed rationale; instead, "a generalized statement of its reasoning" is adequate, *id.* (internal quotation marks omitted).

The district court gave the necessary statement of its reasoning in Defendant's case. It explained that based on the testimony and exhibits presented at sentencing, it was "absolutely convinced" that the Iron Horsemen was "not some benign motorcycle club" but rather was an "outlaw motorcycle gang[]" whose ranks included people "involved in criminal activity." R., Vol. 3 at 84–85. It noted Defendant's drug dealing, observing that Defendant "became a distributor, or at least helped those that were trying to transact that kind of business." *Id.* at 85–86. And it further explained that Defendant should not be associating with such people while under supervised release but instead should be associating "with people like Mr. Dibiase and his friends." *Id.* at 89.

Without disputing any of the district court's findings, Defendant argues that the challenged portion of the gang condition flouts two of § 3583(d)'s

-11-

requirements: (I) that it be reasonably related to the sentencing factors enumerated in § 3583(d)(1), and (ii) that it not involve a greater deprivation of liberty than necessary to advance the purposes identified by § 3583(d)(2). As we proceed to explain, the gang condition does not plainly violate either requirement.

### 1. Reasonable Relation

To be "reasonably related" to the enumerated sentencing factors, § 3583(d)(1), a condition "does not need to be reasonably related to all of the factors in § 3553." *United States v. Hahn*, 551 F.3d 977, 983–84 (10th Cir. 2008). A reasonable relationship to just one factor will suffice. *See id.* Thus, we have upheld special conditions forbidding defendants from associating with specified groups of people even when the conditions were unrelated to the offense of conviction. In *Hahn*, for example, the defendant was convicted of misapplying the funds of his employer, a financial institution. *See* 551 F.3d at 979. But based on his earlier state conviction for a sex offense involving a child, the district court imposed special conditions of supervised release proscribing his association with children and his holding of a job with access to children without the probation officer's consent. *See id.* at 982 & n.9. Although the conditions did not relate to the nature and circumstances of the defendant's offense, they did relate to his history and characteristics as well as the need to protect the public from future crimes. *See id.* at 984. Similarly, in *United States v. Mike*, 632 F.3d 686, 689–90, 696–97 (10th Cir. 2011), we upheld a special condition forbidding the

-12-

defendant from having contact with children based on his past commission of a sex offense, even though the offense of conviction was a nonsexual assault on an adult.

In light of these precedents, the district court committed no "clear or obvious" error under § 3583(d)(1) when it forbade Defendant from associating with members of the Iron Horsemen or allied gangs while on supervised release. *Puckett*, 556 U.S. at 135. Defendant has not contested the court's finding that the Iron Horsemen was a criminal gang. And the court could properly find that his drug transactions arose out of his activities as a nomad for the Iron Horsemen. No clear precedent would prohibit the district court from concluding that the restriction on Defendant's association was reasonably related to Defendant's history and characteristics, deterring future criminal conduct, and protecting the public from further crimes. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C).

### 2. No Greater Deprivation of Liberty than Reasonably Necessary

Similarly, no clear precedent from either this court or the Supreme Court compels the conclusion that the special condition "involves . . . greater deprivation of liberty than is reasonably necessary" to advance the statutorily enumerated interests. *Id.* § 3583(d)(2). Defendant points out that § 3563(b)(6) refers only to forbidding a defendant "from associating *unnecessarily* with specified persons." *Id.* § 3563(b)(6) (emphasis added). He contends that this

language does not permit a categorical prohibition on his associating with members of the Iron Horsemen or allied gangs. This argument overlooks, however, the likelihood that a prohibition solely on *membership* in the Iron Horsemen and its allied gangs could have been readily evaded in the absence of an accompanying prohibition on association with gang members. Indeed, other circuits have upheld conditions that categorically forbade association with members of entire groups. For example, the Seventh and Ninth Circuits approved conditions that prohibited association with members of any neo-Nazi or white-supremacist organization. *See United States v. Ross*, 476 F.3d 719, 721 (9th Cir. 2007); *United States v. Showalter*, 933 F.2d 573, 574 (7th Cir. 1991). This precedent establishes that the prohibition on association in this case was not "clearly" improper.

Defendant does cite one case, *United States v. Johnson*, 626 F.3d 1085, 1091 (9th Cir. 2010), in which a special condition relating to association with gang members was struck down as overly restrictive (although under the First Amendment, not § 3583(d)). The special condition in *Johnson*, however, was critically different from the one imposed on Defendant in that it proscribed the defendant from associating not only with the members of a designated gang but also with persons *associated* with that gang. *See id.* at 1090. The *Johnson* court, after noting several cases in which it had approved special conditions that restricted association with gang members, explained that "[t]here is a

-14-

considerable difference . . . between forbidding a defendant from associating with gang members and precluding him from associating with *persons who associate with* gang members." *Id.* at 1091. It therefore vacated the condition for inflicting a greater deprivation of liberty than necessary for the goals of supervised release. *See id.* We infer that a restriction on associating with gang members alone would have passed muster.

We recognize, and emphasize, that courts should take care to observe § 3583(d)(2)'s injunction against conditions that restrict liberty more than the § 3553(a) factors demand. It is also true, however, that courts are faced with pragmatic limits on the capacity of the probation office to conduct individual background checks on a defendant's associates. Of course, nothing we say here precludes the district court from modifying its order upon a proper showing.

We conclude that even if the district court's decision to impose the gang condition was contrary to § 3583(d)(2), the error was not plain.

**C.     Defendant's Constitutional Claim**

Defendant also claims that the gang condition violated his freedom of association under the First Amendment. Once again applying plain-error review, we must reject this claim.

A defendant on probation "forfeits much of his freedom of action and even freedom of expression to the extent necessary to successful rehabilitation and protection of the public." *Porth v. Templar*, 453 F.2d 330, 334 (10th Cir. 1971).

Following this principle, "[c]ourts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation." *United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995). We have repeatedly found such a reasonable relationship to exist. For example, we have said that the First Amendment permitted a special condition that required a defendant to disassociate himself from any organization aimed at defeating the tax laws, *see United States v. Lawson*, 670 F.2d 923, 929 (10th Cir. 1982); that forbade a defendant from picketing in front of abortion clinics, *see Turner*, 44 F.3d at 903; and that prohibited a defendant from making "public speeches designed to urge or encourage others to violate the [tax] laws," *Porth*, 453 F.2d at 334 (but remanding for revision of condition to avoid forbidding "the naked expression of opinion as to constitutionality of the measures in question.").

Moreover, other circuits have repeatedly considered and rejected First Amendment challenges to conditions of supervised release similar to those imposed on Defendant. *See Turner v. United States*, 347 F. App'x 866, 868–69 (3d Cir. 2009) (defendant could not associate with members of the Pagan Motorcycle Club); *Ross*, 476 F.3d at 721 (defendant could "not associate with known neo-Nazi/white supremacist members, known neo-Nazi/white supremacist affiliates, or any other organization that advocates engaging in criminal activity or overthrowing the United States government" (internal quotation marks

-16-

omitted)); *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (defendant could "not participate in the activities, or be a member of any motorcycle clubs" (internal quotation marks omitted)); *Malone v. United States*, 502 F.2d 554, 555 (9th Cir. 1974) (defendant could "not visit any Irish pubs" or accept any "employment that directly or indirectly associates him with any Irish organization or movement" (internal quotation marks omitted)). And as we have noted, in *Johnson* the Ninth Circuit implicitly held that a restriction only on association with gang *members* would have comported with the First Amendment. *See Johnson*, 626 F.3d at 1091.

This case law persuades us that any error that the district court may have committed in restricting the Defendant's association with the members of the Iron Horsemen or allied gangs was not "clear or obvious." *Puckett*, 556 U.S. at 135. As we have already discussed, given the court's undisputed findings about Defendant's past criminal behavior and the existence of criminal elements within the membership of the Iron Horsemen, we cannot say that the court clearly erred in concluding that the gang condition was reasonably related to one or more of the goals of Defendant's supervised release. Defendant's constitutional argument is therefore without merit.

## III.   CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge