# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50627

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2015

Lyle W. Cayce
Clerk

DANIEL K. JOHNSON, also known as Dennis D. Kelly,

Plaintiff-Appellant

v.

RISSIE OWENS; STUART JENKINS; DAVID GUTIERREZ; JIMMY STUBBLEFIELD; ELVIS HIGHTOWER; JUANITA GONZALES; JAMES LAFAVERS; MICHELLE SKYRME; CYNTHIA TAUSS; ROMAN CHAVEZ,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:13-CV-00394

Before HIGGINBOTHAM, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Daniel Johnson challenges several conditions of his Texas parole, urging that they violate various constitutional provisions in this § 1983 suit.

## I.

Daniel Johnson was convicted of aggravated rape (now classed as aggravated sexual assault) of an adult woman in 1977 and sentenced to life in prison by a Texas court. He was advised that he would be released on

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50627

parole under conditions including "Special Condition 'X.'"  This condition is placed on sex offenders and requires enrollment in a sex offender treatment program and submission to polygraph testing, as well as authorizing discretionary computer, Internet, and photography restrictions.  Months later, but before his release, he was advised that several conditions were being added to his parole; Mr. Johnson believes this was a response to confidential information received from his ex-wife.  The new conditions were that he was not to contact his ex-wife or three biological children, he was not to leave Texas without permission, and he was to be placed on the Super Intensive Supervision Program (SISP), which includes electronic monitoring of his location.

Once released on parole, Mr. Johnson was denied all access to computers and photography equipment; he asked repeatedly for these conditions to be removed.  A variety of fees related to his parole conditions were imposed.  He brought suit under § 1983, challenging various conditions of his parole.  After the suit was filed, he was advised that he was allowed access to computers for employment and bill-paying purposes only.  The parties filed cross-motions for summary judgment, and the district court, following the magistrate's recommendation, denied Mr. Johnson's motion and granted the defendants', dismissing all claims.  After Mr. Johnson timely appealed, the SISP condition was lifted.

## II.

We review the grant of summary judgment *de novo*,[1] making all reasonable inferences in favor of the non-moving party.[2]  A party may obtain summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012).
[2] *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009).

## No. 14-50627

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3]  To avoid summary judgment, "[t]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim."[4]

### III.

Mr. Johnson challenges the restrictions on his use of computers and photography equipment under the First Amendment.  In granting his parole, the Texas Board of Pardons and Paroles (TBPP) stated that Mr. Johnson was "required to comply with . . . special conditions of parole [including] . . . X Sex Offender Program."  The Texas Department of Criminal Justice Parole Division's Policy and Operating Procedure 3.6.2 explains that:

> Special conditions and discretionary components shall directly relate to the identified risk, supervision, and treatment needs of the individual offender.
>
> 1.  Special Condition "X"
> . . . The officer shall apply the appropriate components on a case-by-case basis to ensure effective supervision. . . .
>
> c. At any time Special Condition "X" is imposed, the officer may apply the following components at his discretion.
> . . .
> (2) The offender shall not own, maintain or operate computer equipment without a declared purpose and the written authorization of the offender's supervising parole officer. . . .
>
> (3) The offender shall not own, maintain, or operate photographic equipment, to include Instamatic, still photo, video, or any

---

[3] *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (quoting Fed. R. Civ. P. 56(c)).

[4] *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

## No. 14-50627

electronic imaging equipment unless approved in writing by the offender's supervising parole officer.[5]

This policy was promulgated under the TBPP's statutory authority to "impose as a condition of parole . . . any condition that a court may impose on a defendant placed on community supervision."[6]

Mr. Johnson specifies that his constitutional claims are all "as applied."[7]  Access to computers and photography equipment was first completely denied to Mr. Johnson, subject to his ability to secure parole officer approval for particular purposes.  He was later—and apparently is now—authorized to use a computer for work and for paying bills only.

We address the restriction in its current form.[8] Mr. Johnson is banned from using photography equipment and from using computers for anything other than work and bill-paying unless and until his parole officer determines that the conditions should be eased.  He explains that he wants to use a computer to "gain information from governmental websites, participate in the legitimate political process and voice his opinion on political and social issues, to undertake [genealogical] research, to share family pictures with his family, who lives in Illinois, to purchase items on line," and "for his personal litigation."  He wants "to use a camera . . . as a form of expression, to record historical sites, cultural and political events, community social events, and share those pictures and expression with others."

---

[5] Tex. Dep't of Criminal Justice Parole Div., Policy and Operating Procedure 3.6.2, 2, 4-5, 2011.

[6] Tex. Gov't Code Ann. § 508.221; *see also Jennings v. Owens*, 585 F. Supp. 2d 881, 885-86 (W.D. Tex. 2008) (explaining the origin of Special Condition X) *rev'd,* 602 F.3d 652 (5th Cir. 2010).

[7] Accordingly we decline to address his cursory references to facial vagueness and overbreadth arguments, which are also waived for inadequate briefing.

[8] Any re-imposition of the total ban would involve fact-sensitive inquiries into the reason for the imposition.  If the defendants made a habit of repeatedly imposing and rescinding the total ban, the situation might be different.

No. 14-50627

Prisoners' First Amendment rights may be restricted in ways "reasonably related to legitimate penological interests."[9]  The First Amendment rights of probationers can also be constitutionally restricted if "reasonably necessary" for purposes such as protecting the public and discouraging recidivism.[10]  Parole is on the "'continuum' of state-imposed punishments," falling between imprisonment and probation,[11] and is comparable to supervised release in the federal system.[12]  It follows that parolees' First Amendment Rights may be restricted to a degree intermediate to those of prisoners and probationers, and similar to those of offenders on supervised release, but we have not made clear exactly what standard applies.  Few parole cases have presented the issue before us, and our analysis in supervised release cases has been largely statutory rather than constitutional.[13]

In *United States v. Bird*, the closest we have come to deciding this issue, we held that a temporary supervised release restriction of First Amendment rights requiring a defendant to stay 1,000 feet from abortion clinics was constitutional where it was "reasonably necessary" to further the governmental interest in preventing violent activity.[14]  Because supervised release and parole are in comparable positions on the continuum of punishments, this holding suggests that parolees' First Amendment rights may be restricted as long as it is reasonably necessary for certain government

---

[9] *Stauffer v. Gearhart*, 741 F.3d 574, 584 (5th Cir. 2014).

[10] *United States v. Locke*, 482 F.3d 764, 768 (5th Cir. 2007).

[11] *Samson v. California*, 547 U.S. 843, 850 (2006).

[12] *See id.* at 850, 854-55 (citing supervised release cases interchangeably with parole cases for the proposition that parole is intermediate to imprisonment and probation); *Doe v. Harris*, 772 F.3d 563, 571 (9th Cir. 2014) (treating parole and federal supervised release equivalently for purposes of the "continuum of possible punishments").

[13] *See, e.g.*, *United States v. Paul*, 274 F.3d 155, 164-65 (5th Cir. 2001) (analyzing conditions under 18 U.S.C. §§ 3553 and 3583 rather than the First Amendment).

[14] *United States v. Bird*, 124 F.3d 667, 684 (5th Cir. 1997).

objectives.  *Bird* tells us that this standard is sufficient constitutionally, but does not tell us whether it is required.  Because the "reasonably necessary" standard is used to assess First Amendment restrictions on *probationers*, logically something less than that standard is required to restrict parolees' rights.

Other circuits' parole and supervised release cases provide additional guidance on the constitutional dimensions of the issue, and support the view that even if parolees' rights may be more readily restricted than probationers' some rational justification is still required.  The Ninth Circuit recently summarized its case law on the First Amendment protection applicable to various classes of registered sex offenders.  Following the Second Circuit's decision in *Birzon v. King*, the court explained that:

> [a]lthough parolees "should enjoy greater freedom in many respects than a prisoner, . . . the Government may . . . impose restrictions on the rights of the parolee that are reasonably and necessarily related to the [Government's] interests." . . . [B]ecause parolees retain some of their First Amendment rights we have . . . . struck conditions of release that unreasonably burdened those rights.[15]

Variations on the "reasonably and necessarily related" standard are the rule in other circuits as well,[16] sometimes phrased in terms of whether the restriction is "directly related,"[17] "narrowly tailored and . . . directly

---

[15] *Harris*, 772 F.3d at 571 (quoting *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972)).

[16] *Farrell v. Burke*, 449 F.3d 470, 497-98 (2d Cir. 2006) (continuing to utilize the *Birzon* test); *United States v. Spilotro,* 786 F.2d 808, 816 n.5 (8th Cir. 1986) (noting that restrictions on parolees' First Amendment association rights have been held constitutional when "reasonably and necessarily related to . . . substantial governmental interests").

[17] *United States v. Nixon*, 664 F.3d 624, 627 (6th Cir. 2011).

related,"[18] or "reasonably related"[19] to governmental goals such as rehabilitation and protecting the public.

Whatever the exact formulation, the question before us is basically one of reasonableness; whether the computer and photography restrictions placed on Mr. Johnson are reasonably related to achieving important state goals such as protecting the public and encouraging reintegration into society.[20] The district court ruled that the partial ban on computer use and total ban on photographic equipment, both restrictions susceptible to being lifted in whole or part by parole officers, are "reasonably related" to these goals because Mr. Johnson is a sex offender.

The fact that the restrictions on Mr. Johnson can be lifted when parole officers find it appropriate,[21] that the computer ban allows access for work and bill-paying,[22] and that photography is a hobby of Mr. Johnson's rather than his livelihood,[23] make the restrictions less harsh and more likely to pass constitutional muster. Moreover, the policy document setting the contours of Special Condition X states that that discretionary conditions should be applied on a "case-by-case basis" in accordance with the "identified risk,

---

[18] *United States v. Crandon*, 173 F.3d 122, 128 (3d Cir. 1999); *United States v. Neeley*, 420 Fed. App'x. 228, 231-32 (4th Cir. 2011) (citing *Crandon* in supervised release case); *United States v. Loy*, 237 F.3d 251, 256, 259, 263 (3d Cir. 2001) (same).

[19] *Behlke v. Jordan*, 83 F.3d 424, 1996 WL 208514, at *1 (7th Cir. 1996); *see also United States v. Schoenherr*, 504 Fed. App'x. 663, 670-71 (10th Cir. 2012).

[20] Mr. Johnson has not questioned that these are sufficiently weighty state goals. Though he argues that the defendants never advanced them as reasons for the restriction on him, they appear at the beginning of the Parole Division policy document defining Special Condition X, which Mr. Johnson placed in the record. *See* Tex. Dep't of Criminal Justice Parole Div., Policy and Operating Procedure 3.6.2, 1, 2011.

[21] *United States v. Zinn*, 321 F.3d 1084, 1092-93 (11th Cir. 2003) ("We are also satisfied that the restriction in this case is not overly broad in that Appellant may still use the Internet for valid purposes by obtaining his probation officer's prior permission.").

[22] *See United States v. Malenya*, 736 F.3d 554, 560 (D.C. Cir. 2013) (noting that employment and bill paying are two important tasks that incorporate computers).

[23] *See Paul*, 274 F.3d at 171.

supervision, and treatment needs" of parolees.[24]   To the extent this policy is carried out, the conditions imposed should logically be "reasonably related" to the state's permissible goals.

The trouble is that Mr. Johnson has presented evidence that the policy of imposing the computer and photography restrictions on an individual basis was *not* carried out in his case.  Rather, his initial probation officer imposed the restriction because Mr. Johnson is a sex offender.[25]   The defendants have offered no explanation of why it is reasonably necessary to severely restrict Mr. Johnson's computer access and ban access to photography, other than his sex offender status.[26]   The defendants make no argument that it is necessary or reasonable to broadly categorize offenders in this manner—the Probation Department policy in fact contemplates that computer and photography restrictions should be applied "case-by-case."

Mr. Johnson's sex offense, aggravated rape of an adult, had no connection to computers, the Internet, photography, or minor victims.  Nor have the defendants identified any aspect of his history or characteristics that would make general access to computers or photography equipment dangerous or counterproductive—this would be a different case if the

---

[24] Tex. Dep't of Criminal Justice Parole Div., Policy and Operating Procedure 3.6.2, 2, 2011.

[25] *Compare* Pl.'s Mot. for Partial Summ. J., 25, ECF No. 56 (Mr. Johnson stating in signed declaration that Parole Officer Stubblefield "informed [Mr. Johnson] that he would not allow any parolee on his caseload . . . to possess and use a computer with Internet access in their homes, as it was his policy to prevent such use.") *with* Ex. P to Resp. in Opp'n to Am. Mot. for Summ. J., 6, ECF No. 73-4 (Stubblefield stating in response to Request for Admissions that "while it was not my personal policy, I had the right, under TDCJ-Parole Division policies and procedures to refuse **any** sex offender with a Special Condition X access to a computer with internet access" (emphasis added)).

[26] We note that Mr. Johnson's counselor wrote a letter requesting that Mr. Johnson's restrictions be partly lifted to allow use of "computer for work related purpose and paying his bills only" prior to the condition's being eased.  The defendants do not argue that this letter shows the remaining restrictions are "reasonably necessary" or that the request to lift certain conditions constitutes a professional opinion that other conditions are necessary.

condition were more tailored, for example restricting access to only certain kinds of websites.[27]  It is easy to see how the broad computer restriction here could *hinder* his reintegration given that it currently blocks his access to most e-mail communication, myriad sources of news, and information about community events and places of commerce.[28]

The Constitution protects parolees' First Amendment rights as long as infringement is not reasonably related to achieving state goals like protecting the public.  Intrusive restrictions on computers, photography, and Internet use have been upheld only where there was a connection between the offender or offense and improper use of computers or Internet,[29] or photography.[30]  At times they have not been upheld even then.[31]  Though we

---

[27] *See*, e.g.*, United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005) ("[T]he district court can impose a more narrowly-tailored restriction on Mr. Crume's computer use through a prohibition on accessing certain categories of websites and Internet content and can sufficiently ensure his compliance with this condition through some combination of random searches and software that filters objectionable material."); *United States v. Sofsky*, 287 F.3d 122, 127 (2d Cir. 2002) (noting methods by which Internet usage may be monitored); *United States v. White*, 244 F.3d 1199, 1206-07 (10th Cir. 2001) (noting availability of filtering software).

[28] *See*, e.g.*, Malenya*, 736 F.3d at 560 (noting the many uses of computers and the Internet); *Sofsky,* 287 F.3d at 126 (same).

[29] *See, e.g.*, *Locke*, 482 F.3d at 768 (in probation case, upholding Internet restriction where defendant used Internet to acquire child pornography); *Crandon*, 173 F.3d at 127-28 (upholding 1-year ban on Internet use during supervised release where defendant "used the Internet as a means to develop an illegal sexual relationship with a young girl"); *United States v. Peterson*, 248 F.3d 79, 82-83 (2d Cir. 2001) (in probation case, overturning broad restriction on computer and Internet access in part because defendant's sex offense had no "connection to computers or to the Internet").

[30] *See, e.g.*, *Paul*, 274 F.3d at 170-71 (in supervised release case, upholding restriction on photography equipment where defendant possessed photographs of naked local children, and there was evidence he may have produced child pornography).

[31] *See, e.g.*, *Crume*, 422 F.3d at 733 (in supervised release case, vacating ban on Internet and computer use without permission of parole officer where defendant possessed child pornography on his computer); *United States v. Freeman*, 316 F.3d 386, 387-88, 391-92 (3d Cir. 2003) (in supervised release case, vacating ban on possessing computer in home and using Internet without parole officer permission where defendant possessed child pornography on his laptop); *Sofsky*, 287 F.3d at 124, 126-27 (in supervised release case, overturning ban on computer or Internet use without probation officer permission where defendant possessed over 1,000 child pornography images on computer).

recognize parole officers' expertise in fashioning parole conditions, some rational connection must connect the First Amendment restriction to Mr. Johnson and the state's goals. Here, Mr. Johnson declares that no such connection exists, and has not been gainsaid. Simply stating that these restrictions relate to Texas's protection and reintegration goals does not make it so, in the absence of logical or factual connections. Otherwise every conceivable deprivation of rights would be constitutionally permissible.

The fact that someone raped an adult woman and is thus a sex offender, without more, is not enough to show that severe restrictions on computer and photography access are reasonably related to Texas' interests in reintegration and protection. The district court's grant of summary judgment on the First Amendment claims based on Mr. Johnson's sex offender status was thus error, and we reverse. Because the court accepted Mr. Johnson's sex offender status as sufficient to support the restrictions, it did not address Mr. Johnson's signed declarations and other evidence on this issue. We remand so that the court may determine in the first instance whether Mr. Johnson has created a genuine issue of material fact as to the non-existence of a reasonable connection between the restrictions and the offender—some connection beyond Mr. Johnson's conviction for aggravated rape—which causes the restrictions to be reasonably necessary.

## IV.

Mr. Johnson urges that the restriction against his traveling outside of Texas without permission[32] violates the equal protection clause. He claims that the restriction was placed on him with ill will by the board members, based on malicious false information from his ex-wife and children, and treats him more harshly than higher-risk parolees. He cites *Snowden v.*

---

[32] Permission has not been forthcoming, though Mr. Johnson has sought it.

No. 14-50627

*Hughes* for the proposition that "intentional or purposeful discrimination" in administering the parole system may violate equal protection.[33]  But he offers no evidence to support his contention that the defendants' decision to restrict his travel was based on ill will or otherwise constituted "clear and intentional discrimination."[34]  Nor does he argue he has shown he was treated differently from similarly situated parolees without a rational basis,[35] instead explaining that the discovery period expired before he could gather the necessary information.[36]  In the absence of such evidence, Mr. Johnson's equal protection claim fails.

V.

Mr. Johnson argues that the sex offender therapy and SISP conditions[37] and the various required fees associated with his parole violate the ex post facto clause.[38]  The ex post facto clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."[39]  Conditions of parole could increase the punishment for a crime by affecting "the length of sentence if the condition was so onerous that it was effectively impossible to meet."[40]  Parole conditions might also

---

[33] 321 U.S. 1, 8 (1944).

[34] *Id.*

[35] *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[36] We note that Mr. Johnson was granted a thirty-day discovery extension.

[37] Though the SISP condition has been lifted, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice, even in cases in which injunctive relief is sought."  *Meza v. Livingston*, 607 F.3d 392, 400 (5th Cir. 2010) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

[38] Mr. Johnson notes that his ex post facto claims below included that he was subjected to unreliable polygraph testing (discussed in part VII), but does not challenge the merits of the grant of summary judgment on that claim.  He waives any ex post facto claim based on the computer/photography restrictions, choosing to focus on First Amendment claims.

[39] *Garner v. Jones*, 529 U.S. 244, 249 (2000).

[40] *Vineyard v. Keesee*, 70 F.3d 1266, 1995 WL 696732, at *1 (5th Cir. 1995).

constitute additional punishment under the intents-effects test,[41] which asks "whether 1) the legislature intended the sanction to be punitive, and 2) the sanction is 'so punitive' in effect as to prevent courts from legitimately viewing it as regulatory or civil in nature."[42]  We have said that only fees are likely to constitute punitive parole conditions, and rejected challenges to "electronic monitoring, urinalysis, driving restrictions, and curfew."[43]

Neither the defendants nor the court below found fault with Mr. Johnson's assertion that the conditions he challenges result from laws enacted after his 1977 conviction.  Rather the defendants argued and the district court found that the conditions did not increase the punishment for Mr. Johnson's crime.

a.

Mr. Johnson has not shown that either the sex offender therapy or the SISP conditions are impossible for him to meet.  Although some of the mandated therapy goals may not apply to him, it appears from Mr. Johnson's filings that the providers recognize his overall participation in the program as sufficient progress and consider him to be complying.  As to SISP, while equipment malfunctions have apparently resulted in false reports of violations by Mr. Johnson, and his medical conditions have sometimes prevented him from keeping to his prescribed schedule and routes, he was not re-incarcerated as a result.  Moreover, his level of compliance was apparently considered sufficient for the condition to be lifted in November 2014.  On these facts, Mr. Johnson has not created a genuine issue of fact as to whether it was effectively impossible for him to comply with the SISP condition.

---

[41] *Rieck v. Cockrell*, 321 F.3d 487, 487-88 (5th Cir. 2003).

[42] *Moore v. Avoyelles Correctional Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001).

[43] *Vineyard*, 1995 WL 696732, at *1-2.

## No. 14-50627

Mr. Johnson has also not shown that either the sex offender therapy or SISP conditions are punitive under the intents-effects test.  He has offered no evidence that the laws authorizing the conditions are intended to be punitive or that the TBPP intended their application to him to be punitive.  As to the second step of the test, the "most significant question . . . is whether the law while perhaps having certain punitive aspects, serve[s] important nonpunitive goals.  A law serving nonpunitive goals is not punishment, even though it may bear harshly on one affected."[44]  Here, despite the perhaps well-deserved criticism Mr. Johnson levels at the conditions applied to him, both serve important non-punitive functions such as protecting the public.

b.

Mr. Johnson has been required to pay fees associated with his parole, including "counseling and supervision fees," the cost of a landline to allow electronic monitoring, and "polygraph and evaluation fees."  He declares that he is able to make these payments, totaling over $1000 as of January 2014, only due to "assistance from friends."

We have said that "[b]ecause parole in Texas is not part of a defendant's punishment, the change in the parole procedures . . . that imposed [] parole supervision fees was not a violation of the ex post facto clause."[45]  Yet we previously recognized that "[a] statute may be impermissibly retrospective, 'even if it alters punitive conditions outside the sentence itself'"[46] and contemplated that parole fees could in some cases constitute ex post facto punishment.[47]  In this case, Mr. Johnson's ex post facto claim does not survive summary judgment.

---

[44] *Moore*, 253 F.3d at 873 (internal quotation marks and citations omitted).

[45] *Walp v. Bozarth*, 138 F.3d 951, 1998 WL 110049, at *1 (5th Cir. 1998).

[46] *Vineyard*, 1995 WL 696732, at *1 (quoting *Weaver v. Graham*, 450 U.S. 24, 32 (1981)); *see also Sheppard v. State of La. Bd. of Parole*, 873 F.2d 761, 764 (5th Cir. 1989).

[47] *Vineyard*, 1995 WL 696732 , at *1-2; *Sheppard*, 873 F.2d at 764.

No. 14-50627

Mr. Johnson makes no effort to show that the fees were intended to punish parolees, so to survive summary judgment he must show a genuine issue of fact as to whether the fees are effectively impossible to pay or whether they are "'so punitive' in effect as to prevent courts from legitimately viewing [them] as regulatory or civil in nature."[48]  Mr. Johnson declares that he would not be able to pay the fees without help from friends, but points this court to no evidence of his finances or ability to pay, relying instead on conclusory assertions.  He also declares that his continued successful compliance with the terms of parole depends on his paying the fees.  However, his filings show that at least some of his fees are subsidized and that failure to pay therapy or polygraph fees is a "failure to participate in treatment" only if "the offender's ability to pay has been established."

Given Mr. Johnson's failure to introduce evidence of his inability to pay the fees beyond bare assertions, he has not created a genuine issue of fact that the fees are impossible for him to meet.  For the same reason, and especially in light of the self-evident non-punitive reasons for charging parolees fees to cover the costs associated with their parole, he has not created a genuine issue of material fact that the fees are punitive under the intents-effects test.

VI.

Mr. Johnson argues that the SISP condition and sex-offender therapy requirement violate his right to be free from cruel and unusual punishment under the Eighth Amendment[49] and violate substantive due process.[50]  To

---

[48] *Moore*, 253 F.3d at 872.

[49] Mr. Johnson also notes that his Eighth Amendment claims in the district court included that he was subjected to unreliable polygraph testing (discussed below in part VII), but does not challenge the grant of summary judgment on the merits.

[50] Mr. Johnson makes only a procedural argument about the polygraph requirement, and waives any claim related to interstate travel, as discussed in Part VII.

succeed on his Eighth Amendment claims, Mr. Johnson must show deliberate indifference—that the defendants "[knew] of and disregard[ed] an excessive risk to [his] health or safety."[51] Substantive due process protects against arbitrary abuses of government power without reasonable justification[52]—forbidding "only the most egregious official conduct," that which "shocks the conscience."[53]   We have required a showing of at least "deliberate indifference" in order to prove a substantive due process violation has occurred.[54]

As to the sex-offender therapy condition, Mr. Johnson has not created a genuine issue as to whether the defendants were deliberately indifferent to an excessive risk of harm.  In a signed declaration, he stated that the therapy causes him "significant mental and even emotional distress."  It is "distressing and anguishing to [him], personally, to be forced to participate and show progress" in therapy sessions which focus on issues such as deviant fantasies, relevant to repeat offenders with minor victims but not to him.  In addition, Mr. Johnson submits an affidavit from a Licensed Professional Counselor and former Texas Sex Offender Treatment Provider stating that the therapy "could be counterproductive."  This is not enough to establish an "excessive risk" or to be conscious shocking.  Whatever the wisdom of requiring a parolee such as Mr. Johnson to participate in this therapy, he has not produced evidence that it causes such harm as to violate his Eighth Amendment or substantive due process rights.

---

[51] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[52] *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)

[53] *Id.* at 846.

[54] *See Hernandez ex rel. Hernandez v. Tex. Dept. of Prot. and Reg. Servs.*, 380 F.3d 872, 880 (5th Cir. 2004); *see also Daniels v. City of Dallas*, 272 Fed. App'x. 321, 323 (5th Cir. 2008).

No. 14-50627

Regarding the SISP condition, we recognize Mr. Johnson's claimed injuries are not trivial.  He states that he has been forced to urinate on himself in public (due to a medical condition occasioning frequent urination) in order to avoid violating SISP terms by deviating from a prescribed itinerary to find a bathroom.  He has also been repeatedly prevented from sleeping due to malfunctioning equipment and related phone calls in the middle of the night.  By restricting his ability to exercise, SISP has also led to an increase in the pain he is caused by a preexisting spinal condition.

Mr. Johnson does not provide evidence of the frequency of the urination and back pain issues, nor of whether they continued after the defendants were made aware of the problems.  His only argument that the defendants were aware of the harm caused by SISP is that they were made so by his filings in this case.  Assuming his court filings are sufficient evidence of the defendants' awareness of the harm, his failure to show that conditions remained the same *after* the defendants received notice leaves him unable to show that they were deliberately indifferent to excessive risks.

With regard to the sleep disruption stemming from the malfunctioning monitoring equipment, Mr. Johnson's filings make it clear that parole officers attempted to correct the problem by replacing the equipment several times before the SISP condition was finally removed.  Under these circumstances, the defendants' behavior cannot be said to be deliberately indifferent, or to shock the conscience.

## VII.

Mr. Johnson raises several other issues.  First, he argues that the defendants never moved for summary judgment as to his Eight Amendment, Substantive Due Process, and ex post facto claims based on his being subjected to unreliable polygraph tests, or as to his equal protection claim regarding the interstate travel restriction.  A district court may grant

summary judgment *sua sponte* as long as it gives the parties notice and "a reasonable time to respond."[55] The magistrate's Report and Recommendation clearly recommended that "summary judgment should be GRANTED in favor of Defendants on all of Johnson's claims for relief." Mr. Johnson was given fourteen days to respond with objections, in which he was free to highlight any materially disputed facts and his legal arguments as to these claims. His objections demonstrate that he understood the magistrate was recommending summary judgment be granted on the polygraph and interstate travel claims. As such we find the district court's grand of summary judgment was not procedurally improper.

Mr. Johnson has waived several claims by failing to adequately brief them. Although we construe *pro se* plaintiffs' briefs liberally against waiver, such plaintiffs must still brief issues to preserve them.[56] Mr. Johnson's conclusory statements about the impact of the interstate travel restriction on his First and Fourteenth Amendment family association rights are insufficient. So is his one-sentence objection to "the failure of the Appellees' counsel to serve" certain summary judgment exhibits on him.

Mr. Johnson also appeals the district court's orders denying his motion to compel production of letters written by his former wife and his children, which were given to the TBPP prior to the imposition of the SISP, interstate travel, and no-contact restrictions. Claims of privilege are disfavored, particularly in § 1983 cases,[57] yet here the letters were given in confidence, and that confidence is key to maintaining the relationship between members of the public and the TBPP, which the community through the legislature has

---

[55] F.R.C.P. 56(f); *Love v. Natl. Med. Enterprises*, 230 F.3d 765, 770 (5th Cir. 2000) ("[I]t is well-settled that a district court may grant summary judgment *sua sponte,* 'so long as the losing party has ten days notice to come forward with all of its evidence' . . . .").

[56] *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988).

[57] *ACLU v. Finch*, 638 F.2d 1336, 1343-44 (5th Cir. Unit A Mar. 1981).

## No. 14-50627

made clear should be fostered.  Importantly, Mr. Johnson has not explained how the letters would help him to prove his constitutional claims related to the SISP and the interstate travel restrictions, the only relevant conditions in this appeal.  As such, the defendants met the four-part test for recognition of a state privilege,[58] and the district court did not abuse its discretion in denying Mr. Johnson's motion to compel.

_____

We VACATE the district court's grant of summary judgment against Mr. Johnson's as-applied First Amendment Claims and REMAND for further proceedings.  We AFFIRM the remainder of the district court's judgment.

_____

[58] *Finch*, 638 F.2d at 1344 (listing four necessary factors for honoring state privilege rules).